**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Raul Santos Silvas, | No. CIV 12-171-TUC-JGZ (LAB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| vs. | |
| Charles L. Ryan; et al., | |
| Respondents. | |

Pending before the court is a petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254, filed on March 8, 2012, by Raul Santos Silvas, an inmate confined in the Arizona State Prison Complex in Kingman, Arizona.  (Doc. 1)

Pursuant to the Rules of Practice of this Court, this matter was referred to Magistrate Judge Bowman for report and recommendation.

The Magistrate Judge recommends the District Court, after its independent review of the record, enter an order denying the petition on the merits.


Summary of the Case

Santos Silvas was found guilty after a jury trial of aggravated robbery, armed robbery, theft of a means of transportation, and two counts of aggravated assault.  (Doc. 11, p. 3)  At the trial, the state introduced evidence that Santos Silvas and three others approached Coleman Fonville as he was sitting in his vehicle, assaulted him, and then stole the vehicle.  (Doc. 11-2,

p. 23)   Later the same morning, Santos Silvas and at least eight others were causing a disturbance in the street when Virginia Bickett approached the group and asked them to "please hold it down." *Id.* Santos Silvas and another member of the group hit and kicked Bickett until a bystander intervened. *Id.* Bickett and her daughter contacted police providing them with a partial license plate of the vehicle Santos Silvas had been driving. *Id.* The police located the vehicle and arrested the driver, Santos Silvas. *Id.* The vehicle turned out to be the one stolen earlier from Fonville. *Id.*

The trial court sentenced Santos Silvas to terms of imprisonment totaling 23.75 years. (Doc. 11, p. 3)

On direct appeal, Santos Silvas argued the evidence was insufficient to support three of his convictions. (Doc. 11, p. 3) The Arizona Court of Appeals affirmed his convictions and sentences on March 19, 2009. (Doc. 11-2, pp. 22-27) The Arizona Supreme Court denied review on July 30, 2009. (Doc. 11-2, p. 40)

On August 31, 2009, Santos Silvas filed notice of post-conviction relief, but counsel was unable to find any meritorious issues to raise. (Doc. 11, p. 3) Santos Silvas subsequently filed his own petition pro se in which he argued, among other things, that (1) pretrial counsel was ineffective for failing to challenge the indictment, (2) trial counsel was ineffective for (a) failing to object to the prosecution's use of a photograph of Santos Silvas in handcuffs for identification purposes, (b) failing to aggressively cross-examine witnesses, and (c) failing to challenge the trial court's exclusion of a witness who would have testified that the victim witness, Bickett, was seeking a bribe in exchange for her silence, and (3) appellate counsel was ineffective for failing to challenge the trial court's use of a single sign language interpreter. (Doc. 11-3, pp 21, 24, 28) The trial court denied the petition on October 12, 2010. (Doc. 11-5, p. 2)

Santos Silvas filed a petition for review with the Arizona Court of Appeals arguing (1) pretrial counsel was ineffective for failing to challenge the sufficiency of the identification evidence and (2) trial counsel was ineffective for (a) failing to object to the use of a photograph of him in handcuffs, (b) failing to aggressively conduct cross-examination, (c) and failing to

challenge the lack of identification evidence.  (Doc. 11-5, pp. 24-2)  The Arizona Court of Appeals granted review but denied relief on April 26, 2011. (Doc. 11-6,  p. 2)  His petition for reconsideration was denied on July 21, 2011.  (Doc. 11, p. 4)

On October 13, 2001, Santos Silvas filed a second notice of post-conviction relief, but counsel was unable to find any meritorious issues to raise.  (Doc. 11, p. 4)  The court permitted time for Santos Silvas to file his own petition pro se.  (Doc. 11, p. 4) The record does not contain any further information concerning this proceeding.

On March 8, 2012, Santos Silvas filed the pending petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254.  (Doc. 1)  He claims (1) the trial court erred by proceeding with a single American Sign Language interpreter; (2) the trial court erred when it allowed  Fonville to identify Santos Silvas from a photograph taken just after his arrest; (3) trial counsel was ineffective for (a) failing to object to the use of the arrest photograph and (b) failing to raise inconsistencies in the testimony of the arresting officers; (4) the trial court erred when it precluded the defense from offering the testimony of a Byron Broger to impeach the second victim, Virginia Bickett; (5)(a) his indictment was "based partially on perjured testimony"; and (5)(b) his pre-trial attorney was ineffective for failing to challenge the indictment.

In their answer, the respondents argue Santos Silvas' claims should be denied as procedurally defaulted or on the merits.  (Doc. 11)  In his reply, Santos Silvas argues his procedural default should be excused because appellate counsel and Rule 32 counsel "obviously overlooked these unconstitutional violations."  (Doc. 17, p. 9)

Discussion

The writ of habeas corpus affords relief to persons in state custody in violation of the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a).  If the petitioner is in custody pursuant to the judgment of a state court, the writ will not be granted unless prior adjudication of the claim –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The petitioner must shoulder an additional burden if the state court considered the issues and made findings of fact.

In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C.A. § 2254 (e)(1).

A decision is "contrary to" Supreme Court precedent if the "state court confronted a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a result different from Supreme Court precedent." *Vlasak v. Superior Court of California ex rel. County of Los Angeles,* 329 F.3d 683, 687 (9th Cir. 2003).   A decision is an "unreasonable application" if "the state court identified the correct legal principles, but applied those principles to the facts of [the] case in a way that was not only incorrect or clearly erroneous, but objectively unreasonable." *Id.*  If the state court denied on the merits but did not explain its reasoning, this court must independently review the record to determine whether the state court clearly erred in its application of Supreme Court law. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002), *cert. denied*, 539 U.S. 916 (2003).  If the highest state court fails to explain its decision, this court looks to the last reasoned state court decision.  *See Brown v. Palmateer*, 379 F.3d 1089, 1092 (9th Cir. 2004).

Federal habeas review is limited to those issues that have been fully presented to the state court.  This so-called "exhaustion rule" reads in pertinent part as follows:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that – (A)  the applicant has exhausted the remedies available in the courts of the State. . . .

28 U.S.C. § 2254(b)(1)(A).  This rule permits the states "the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995)  (internal punctuation removed).

To be properly exhausted, the federal claim must be "fairly presented" to the state courts. *Picard v. Connor*, 404 U.S. 270, 275, 92 S.Ct. 509, 512 (1971). In other words, the state courts must be apprised of the issue and given the first opportunity to rule on the merits. *Id.* at 275-76. Accordingly, the petitioner must "present the state courts with the same claim he urges upon the federal courts." *Id.* "The state courts have been given a sufficient opportunity to hear an issue when the petitioner has presented the state court with the issue's factual and legal basis." *Weaver v. Thompson*, 197 F.3d 359, 364 (9th Cir. 1999).

In addition, the petitioner must explicitly alert the state court that he is raising a federal constitutional claim. *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Casey v. Moore*, 386 F.3d 896, 910-11 (9th Cir. 2004), *cert. denied*, 545 U.S. 1146 (2005). The petitioner must make the federal basis of the claim explicit either by citing specific provisions of federal law or federal case law, even if the federal basis of a claim is "self-evident," *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), *cert. denied*, 528 U.S. 1087 (2000), or by citing state cases that explicitly analyze the same federal constitutional claim, *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

If the petitioner is in custody pursuant to a judgment imposed by the State of Arizona, he must present his claims to the state appellate court for review. *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005), *cert. denied*, 126 S.Ct. 348 (2005); *Swoopes v. Sublett*, 196 F.3d 1008 (9th Cir. 1999), *cert. denied*, 529 U.S. 1124 (2000). If state remedies have not been exhausted, the petition may not be granted and ordinarily should be dismissed. *See Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991). In the alternative, the court has the authority to deny on the merits rather than dismiss for failure to exhaust. 28 U.S.C. § 2254(b)(2).

A claim is "procedurally defaulted" if the state court declined to address the issue on the merits for procedural reasons. *Franklin v. Johnson*, 290 F.3d 1223, 1230 (9th Cir. 2002). Procedural default also occurs if the claim was not presented to the state court and it is clear the state would now refuse to address the merits of the claim for procedural reasons. *Id.*

Procedural default may be excused if the petitioner can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate

that failure to consider the claims will result in a fundamental miscarriage of justice." *Boyd v. Thompson*, 147 F.3d 1124, 1126 (9th Cir. 1998).  A fundamental miscarriage of justice results "where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*,  477 U.S. 478, 496, 106 S.Ct. 2639, 2649 (1986).

Discussion: Interpreter

In claim (1) Santos Silvas argues his constitutional rights were violated when the court allowed the trial to proceed with only one American Sign Language interpreter even though that interpreter objected because protocol called for two interpreters to be present.

The respondents argue that Santos Silvas failed to raise this issue before the Arizona Court of Appeals and therefore failed to properly exhaust this issue below.  The court agrees, but finds that the issue may be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).

Santos Silvas argues generally that the trial court's procedure violated his rights under the "4th, 5th, 6th, and 14th Amendments."  (Doc. 1, p. 6)  He does not specify whether the procedure violated his rights under the Confrontation Clause, the Due Process Clause, or some other provision.  Nevertheless, further clarification is unnecessary, because in order to qualify for habeas relief Santos Silvas must show that the trial court's procedure had a "substantial and injurious effect" upon the verdict.  *See Fry v. Pliler*,  551 U.S. 112, 121, 127 S.Ct. 2321, 2328 (2007).  And Santos Silvas cannot do that.

At trial, one of the victim witnesses, Fonville, testified through an American Sign Language interpreter.  (Doc. 12-2, pp 11-12)  Before the testimony began, the interpreter asked that the proceedings be delayed until a second interpreter could be present.  *Id*.  She explained that protocol called for two interpreters to be present, and she was unfamiliar with the case.  *Id*. She expressed concern that the translation might not be accurate, but she agreed that if the court instructed everyone to be "very slow and methodical" and she had extra time to ask for clarifications, she would be more confident.  *Id*.  The trial court acknowledged the interpreter's reluctance and made the requested accommodations by "instructing everyone to be slow and methodical in their interactions, and by permitting the interpreter more opportunity to ask for

clarifications with the witness." (Doc. 11-5, p. 8)  Santos Silvas presents no evidence that the interpreter made any mistakes or that he was prevented from conducting an adequate cross-examination of the witness.  The trial court's procedure did not have a substantial and injurious effect upon the verdict.  This claim should be denied.

In his claim (2), Santos Silvas argues his rights under the 5th and 6th Amendment were violated when the trial court permitted the victim witness to identify him from a photograph taken after his arrest showing him in handcuffs with tattoos on his arm and chest.

The respondents argue this claim was not properly presented to the Arizona Court of Appeals.  The court agrees, but finds that the issue may be denied on the merits.  *See* 28 U.S.C. § 2254(b)(2).

At trial, the victim witness, Fonville, was unable to identify Santos Silvas as one of his attackers.  This was possibly due to the fact that Santos Silvas gained some weight prior to the trial – "enough as to alter his appearance." (Doc. 11-5, p. 7) Also, Fonville observed that his attacker had numerous tattoos on his upper body, but Santos Silvas wore a long sleeve shirt on the day of trial.  *Id*.  The prosecution asked that Santos Silvas be instructed to remove his shirt for identification purposes.  *Id*.  Instead, the trial court permitted the prosecution to show Fonville a photograph of Santos Silvas taken shortly after he was arrested and showing tattoos on his upper body.  *Id*.  Fonville identified the person in the photograph as one of his attackers.  *Id*.

Santos Silvas argues that the trial court erred by failing to "hold a hearing in the jury's absence to determine from clear and convincing evidence whether it contained unduly suggestive circumstances, and the duty is on the prosecution in such circumstances to establish from all circumstances . . . surrounding pretrial identifications that it was not such as to be unduly suggestive." (Doc. 1, p. 7)

It appears that Santos Silvas bases this claim on the state court case *Arizona v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969), *cert. denied*, 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed.2d 257 (1970).  In *Dessureault*, the Arizona Supreme Court held that where an in-court identification might have been influenced by a previous out-of-court identification procedure

such as a line-up, the court "must hold a hearing in the absence of the jury to determine from clear and convincing evidence" whether or not that pre-trial procedure was so unduly suggestive as to affect the reliability of the later in-court identification. *Id*., pp. 384, 955.

In this case, the victim witness did not engage in any out-of-court identification procedure, suggestive or otherwise. Accordingly, the protections of *Dessureault* have no application here. Santos Silvas' second claim should be denied on the merits. *See also Neil v. Biggers*, 409 U.S. 188, 196, 93 S.Ct. 374, 380 (1972) (Due process could be violated if a prior out-of-court identification procedure was "unnecessarily suggestive and conductive [sic] to irreparable mistaken identification."); *but see Watkins v. Sowders*, 449 U.S. 341, 349, 101 S.Ct. 654 (1981) (Due process does not always require the trial judge to conduct a hearing outside the presence of the jury when identification evidence is at issue.).

In his claim (3), Santos Silvas argues trial counsel was ineffective for (a) failing to object to the use of a photograph of him in handcuffs for identification purposes, (b) failing to request a *Dessureault* hearing, and (c) failing to raise the inconsistencies in the testimony of the two arresting officers. (Doc. 1, p. 8) The respondents argue claim (3)(b) was not raised below and is now procedurally defaulted. The court agrees, but finds that all of the claims may be denied on the merits. *See* 28 U.S.C. § 2254(b)(2).

"The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel." *Luna v. Cambra*, 306 F.3d 954, 961(9ᵗʰ Cir. 2002), reissued as amended, 311 F.3d 928 (9ᵗʰ Cir. 2002) (quoting *Strickland v. Washington*, 466 U.S. 668 (1984)). Habeas relief, however, is available only if "counsel's performance was deficient" and the "deficient performance prejudiced the defense." *Id.* To show prejudice, the petitioner "must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* If the petitioner challenges his conviction, he must show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.*

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668, 689 (1984). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal citation omitted).

In claim (3)(a), Santos Silvas argues trial counsel was ineffective for failing to object to the prosecutor's use of a photograph of him in handcuffs for the purpose of identification. As the court discussed above, the trial court permitted the prosecution to use a photograph of him taken shortly after his arrest for identification purposes because the witness remembered that his assailant had numerous tattoos on his upper body and Santos Silvas was wearing a long-sleeved shirt at trial. *See* (Doc. 11-5, p. 8) The trial court permitted this procedure because Santos Silvas objected to removing his shirt and arranging for a photograph to be taken of Santos Silvas would have been too time consuming. *Id*. It seems clear that if trial counsel offered a formal objection, he would have been overruled by the court. *Id*. Accordingly, Santos Silvas cannot show that trial counsel's allegedly deficient performance caused him prejudice.

In claim (3)(b), Santos Silvas argues trial counsel was ineffective for failing to move for a *Dessureault* hearing. As the court explained above, *Dessureault*, only applies where there was a previous out-of-court identification procedure. That did not occur here. Accordingly, if counsel had made such a motion, it would have been denied. Santos Silvas cannot show that trial counsel's performance was deficient or that he suffered prejudice.

In claim (3)(c), Santos Silvas argues trial counsel was ineffective for failing to highlight inconsistencies in the testimony of the arresting officers, Richardson and Scherzinger.

At trial, Officer Richardson testified that he participated in the traffic stop of the stolen vehicle. He testified that the driver "had a buzz cut, numerous tattoos, Hispanic male." (Doc.

12-3, p. 25). He further stated the driver was, "[j]ust kind of short, I think like 5-4 or something like that, 5-6." *Id*. He further testified that the driver was Santos Silvas, identifying him from photographs and identifying him in the courtroom. *Id*.

Officer Scherzinger testified that there were five people, four male and one female, riding in the stolen vehicle. (Doc. 12-3, p. 28)   He noted that the driver was a Hispanic male with short black hair, black goatee, and arm tattoos. *Id*.   He was unable to identify Santos Silvas as the driver. *Id*.

Santos Silvas argues trial counsel was ineffective for failing to highlight an inconsistency in Richardson's testimony.   Richardson testified that the driver was short, but Santos Silvas asserts that he is six feet tall.   Assuming Santos Silvas is correct about his height, counsel's failure to highlight this inconsistency did not cause him prejudice.   Richardson identified the driver of the stolen vehicle as Santos Silvas based on photographs and his appearance in court. Accordingly, even if counsel had highlighted this inconsistency, it is far from certain that the jury would have had doubts about his identification of Santos Silvas as the driver.   Moreover, even if the jury had doubts and rejected Richardson's testimony that Santos Silvas was the driver, he does not challenge the fact that he was in the stolen car when it was stopped.   This fact combined with the other testimony offered at trial was more than sufficient to support his convictions.

Santos Silvas was identified by Fonville, Bickett, and Bickett's daughter.   (Doc. 11-5, p. 6)   He was riding in the stolen vehicle when it was stopped.   Even if counsel's performance was deficient, Santos Silvas cannot show "there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *See Luna v. Cambra*, 306 F.3d 954, 961(9th Cir. 2002), reissued as amended, 311 F.3d 928 (9th Cir. 2002).

It is not clear why Santos Silvas believes counsel was ineffective in his handling of the testimony of Scherzinger.   Scherzinger did not identify Santos Silvas as the driver of the vehicle.   Perhaps he believes Scherzinger's failure to identify him was further evidence that he was not the driver.   But, as the court explained above, even if Santos Silvas was not the driver, there was sufficient evidence of guilt presented at trial.   The state "was pursuing the case on a

theory of accomplice liability." *See* (Doc. 11-5, p. 8)  Accordingly, it does not matter who was driving.   Santos Silvas cannot prove prejudice.   Counsel was not ineffective.

In claim (4), Santos Silvas argues he was denied his right to compulsory process when the trial court preventing him from calling a witness who would testify that Bickett solicited a bribe in exchange for not testifying against the defendant.

The respondents argue this issue appears in Santos Silvas' second rule 32 petition, and because that petition is still pending, this issue is not properly exhausted.  The respondent's argue, however, that the issue may be denied on the merits.  The court agrees.  *See* 28 U.S.C. § 2254(b)(2).

During the trial, Santos Silvas informed his counsel (and counsel informed the court) that a certain Byron Broger, a defendant in a different trial being conducted in the same courthouse, had information bearing on the credibility of the victim witness Bickett.  (Doc. 12-2, pp. 25-29)  According to Broger, Bickett offered to refrain from testifying against the defendant for $2,000.  *Id*.  The trial court questioned Bickett about the allegations outside the presence of the jury.  *Id*.  Bickett denied knowing Broger and denied soliciting a bribe in exchange for her silence.  *Id*.  In fact, she stated that she had been offered a $10,000 bribe by the defendant's people to refrain from testifying.  (Doc. 12-2, p. 29)  She reported the incident to the police and the county attorney.  *Id*.  The defendant's counsel stated that the allegation might support a motion for a new trial.  (Doc. 12-4, p. 6)  He did not, however, ask to call Broger as a witness.  *Id*.

Santos Silvas claims the trial court violated his right to compulsory process by denying him the opportunity to call Broger as a witness.  The trial court, however, never made this ruling because counsel never called Broger as a witness.  There is no factual basis to support this claim.  Accordingly, it should be denied.

Finally, in claim (5), Santos Silvas argues the "5th, 6th and 14th Amendments" were violated because (a) "Defendant had to stand trial on an indictment which was based partially on perjured testimony, [and] (b) pre-trial attorney refused to challenge [the] proceedings." (Doc. 1, p. 9)  The respondents argue this claim was not properly exhausted and is now

procedurally defaulted.  The court finds the claim may be denied on the merits regardless.  *See* 28 U.S.C. § 2254(b)(2).

Santos Silvas first argues his indictment was supported by "perjured testimony."  The court notes as a preliminary matter that Santos Silvas is entitled to habeas relief only if the state court misapplied "clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d).  And, the court has found "no Supreme Court authority holding that state criminal defendants are entitled to due process in state grand jury proceedings."  *Webber v. Lattimore*, 2011 WL 2604908, *10 (C.D. Cal. 2011).  Assuming, without deciding, that there was constitutional error in the state grand jury proceeding, that error was harmless because Santos Silvas "was ultimately convicted of the offense charged."  *Williams v. Stewart*, 441 F.3d 1030, 1042 (9th Cir. 2006), *cert. denied*, 549 U.S. 1002, (2006).

Santos Silvas further argues counsel was ineffective for failing to challenge the indictment.  (Doc. 1) He argues counsel should have challenged the "perjured testimony," but he does not provide any facts to support his allegations.  According to Santos Silvas, a certain Detective Scholt testified before the grand jury that a Lorean Melendez had been with the victim, Fonville, before and during the assault.  *Id*.  He further alleges that Scholt's statement is not corroborated by other statements attributed to Melendez and Fonville that are contained in the police reports.  *Id*.  Santos Silvas concludes from this inconsistency that Scholt committed perjury.  He is mistaken.

A contradiction in the record is just that – a contradiction.  It is not evidence of perjury.  *See, e.g., U.S. v. Bortnovsky*, 879 F.2d 30, 33 (2nd Cir. 1989) ("Presentation of a witness who recants or contradicts his prior testimony is not to be confused with perjury.");  *U.S. v. Hemmer*, 729 F.2d 10, 17 (1st Cir. 1984) ("Simply because there existed inconsistencies between Lovasco's grand jury and trial testimony does not warrant the inference that the government knowingly introduced perjurious testimony."), *cert. denied*, 467 U.S. 1218 (1984).  Santos Silvas has not provided any facts supporting his argument that the state presented perjured testimony to the grand jury.  He cannot show his counsel's failure to challenge the indictment on this point was deficient performance.  Moreover, he cannot establish prejudice.

A challenge to the indictment, assuming counsel had pursued the issue, would have proceeded pursuant to Ariz.R.Crim.P. 12.9(a).  This rule provides that, "[t]he grand jury proceedings may be challenged only by motion for a new finding of probable cause alleging that the defendant was denied a substantial procedural right . . . ."  *Id.*  Accordingly, if counsel had challenged the indictment, and if he had succeeded, the court would have remanded the case for a "new finding of probable cause."  *See Id.*; *see, e.g., Nelson v. Roylston*, 137 Ariz. 272, 277, 669 P.2d 1349, 1354 (App. 1983) (Where petitioner was denied substantial due process, case was remanded to the grand jury for redetermination of probable cause.).  And, as the trial court found, there was ample evidence to support a finding of probable cause.  (Doc. 11-5, pp. 5-7) The indictment would have issued anyway.

Santos Silvas cannot show counsel's performance was deficient or that he suffered prejudice.  Counsel was not ineffective.


RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order DENYING the Petition for Writ of Habeas Corpus.  (Doc. 1)

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation.  If objections are not timely filed, they may be deemed waived.  Reply briefs are not permitted under the Local Rules.

The Clerk is directed to send a copy of this report and recommendation to the petitioner and the respondents.

DATED this 6th day of August, 2013.


*Leslie A. Bowman*

Leslie A. Bowman
United States Magistrate Judge